IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                        No. 2:19-cr-20116-MSN-tmp

MICHAEL SHANE ROGERS,

    Defendant.
_____

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND DENYING DEFENDANTS' MOTION TO SUPPRESS**
_____

       Before the Court is Defendant Michael Shane Rogers' Motion to Suppress Evidence, (ECF No. 101), filed on September 2, 2020. This Court referred the Motion to the Magistrate Judge for Report and Recommendation on September 2, 2020. (ECF No. 102.) On October 27, 2020, the Chief Magistrate Judge held a hearing on the Motion and issued his Report and Recommendation on December 21, 2020. (ECF No. 121) ("the Report").

       The Chief Magistrate Judge recommended that the Court deny the Motion to Suppress. (*Id*.) Defendant timely filed his objections to the Chief Magistrate Judge's Report on January 5, 2021. (ECF No. 124.) The Government responded to Defendant's objections on January 15, 2021. (ECF No. 128.) The Court has reviewed the entire record in this case and for the reasons below, the Chief Magistrate Judge's Report is **ADOPTED IN PART** and the Motion to Suppress is **DENIED**.

**BACKGROUND**

1

On August 9, 2018, law enforcement officers with the Lauderdale County Sheriff's Office and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") arrived at a residence located at 2267 Curve Nankipoo Road in Ripley, Tennessee. (ECF No. 121 at PageID 478.) Several days prior, the officers had received a tip from a confidential informant that Defendant was growing marijuana at the residence and had a firearm. (*Id*. at PageID 477–78.) Prior to their arrival, ATF Agent Elizabeth White contacted Defendant's probation officer to confirm Defendant's probationer status.[1] (ECF No. 121 at PageID 478.)

Upon their arrival at the residence, officers exited their vehicles and approached the home. (*Id*.) Prior to reaching the home, Defendant's dog approached them and started barking, which in turn caused Investigator Middlebrook to unholster his Taser. (*Id*.) At this time, Defendant exited the home, called his dog away from the officers, placed it into a kennel, and then began speaking with Investigator Jones.[2] (*Id*.) Investigator Jones informed Defendant that officers had received information that Defendant was growing marijuana again.[3] (*Id*.) In response, Defendant volunteered that he was "doing the same thing as last time" before proceeding to point out different parts of the property where it was growing. (*Id*. at PageID 479.)

Following this exchange, Investigator Jones led Defendant back towards the officers' vehicles and introduced him to Agent White. (*Id*.) Shortly after this introduction, Defendant signed two forms, one waiving his *Miranda* rights, and one consenting to a search of the 2267

---

1. Defendant was subject to a search provision which read: "I agree to a search without a warrant of my person, vehicle, property or place of residence by any probation, parole officer or law enforcement officer at any time." (ECF No. 122 at 543–44.)
2. Defendant testified that officers had firearms pointed at his dog, and then pointed them at him. (ECF No. 122 at PageID 585–87.) The Report concluded that his testimony was not credible.
3. Investigator Jones had previously arrested Defendant for growing marijuana in the past. (ECF No. 122 at PageID 533–34.)

Curve Nankipoo Road residence. (*Id*. at PageID 479–480.) The search of the residence resulted in officers finding a number of marijuana plants as well as a firearm and ammunition.[4] (*Id*. at PageID 480.) Once the search concluded, Agent White again interviewed Defendant about the firearm, marijuana, and ammunition discovered at the residence. (*Id*. at PageID 481.) Defendant admitted to borrowing the rifle from his brother and to growing marijuana at the residence over the last several months. (*Id*.) Defendant was then transported to the Lauderdale County Justice Center. (*Id*.)

At the Justice Center, Agent White again interviewed Defendant. (*Id*.) When asked by Agent White if he lived at the 2267 Curve Nankipoo residence, Defendant stated that, although he lived primarily with his mother, he had lived at the 2267 Curve Nankipoo residence part-time in the past with his girlfriend. (*Id*.) Although Defendant was informed of and waived his *Miranda* rights back at the residence, approximately three minutes into the interview at the Justice Center, Agent White stated "I forgot to mention, you're still, I mean we read you your rights earlier, I just want to remind you, you're still . . ." (*Id*.) Following this reminder, Defendant elected to continue the interview. (*Id*.)

On April 25, 2019, Rogers was indicted by a grand jury on one count of possessing a firearm after having been previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1), one count of possessing ammunition after having been previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1), and one count of possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1.) On November 21, 2019, Rogers was indicted on

---

4. The ammunition (9 mm. and .30–06) was not the type used by the rifle (.22) (ECF No. 122 at PageID 552.)

3

an additional charge of possessing a firearm in furtherance of a crime of drug trafficking in violation of 18 U.S.C. § 924(c).  (ECF No. 40.)

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the Court may refer a motion to suppress in a criminal matter to a magistrate judge for the purpose of conducting an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the motion.  28 U.S.C. § 636(b)(1)(B). The Court must "make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made."  § 636(b)(1)(C).  However, the Court is not required to conduct de novo evidentiary hearing as part of its de novo review.  *United States v. Raddatz*, 447 U.S. 667, 674 (1980).  After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge.  § 636(b)(1)(C).  Moreover, the Court need not review, under a de novo or any other standard, those aspects of the report and recommendation to which no specific objection is made.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Rather, the Court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed.  *Id*. at 151.

## LAW AND ANALYSIS

Defendant objects to the Report's conclusion that both the search and the questioning by the law enforcement officers were lawful.  (ECF No. 124.)  With respect to the search, Defendant argues that the Report erred in concluding that the search was lawful because officers entered the 2267 Curve Nankipoo Road residence prior to getting Defendant's consent.  (*Id*. at PageID 642–46.)  Additionally, Defendant objects to the Report's conclusion that no warrant was necessary to search the residence because of Defendant's probation order waiving the need for one.  (*Id*. at PageID 646–52.)  With respect to the questioning of Defendant by law enforcement, Defendant

argues that the Report was incorrect to find that he was not "in custody" for purposes of *Miranda* at the beginning of his encounter with law enforcement. (*Id*. at PageID 652–53.) Lastly, Defendant asserts that the Report erred in finding that Defendant waived his *Miranda* rights shortly after speaking to Agent White, and that the record does not establish a valid waiver of those rights. (*Id*. at PageID 653–56.) While Defendant's objection to the Report's conclusion with regard to consent is correct, the remainder of Defendant's arguments concerning the search of the residence are unavailing.

A.  The Search of the 2267 Curve Nankipoo Road Residence.

The Court will first review Defendant's objection regarding the search of the 2267 Curve Nankipoo Road residence. Defendant's objections to the search are two-fold. First, Defendant objects to the Chief Magistrate Judge's determination that Defendant gave officers valid consent to search the 2267 Curve Nankipoo Road residence. (ECF No. 124 at PageID 642–646.) Second, Defendant argues that the probationer exception to the warrant requirement in the Fourth Amendment is not applicable here because Defendant was not at his residence. (*Id*. at PageID 646–52).

1. <u>Defendant did not provide a valid consent to the search because it was already underway when he signed the consent form.</u>

With respect to the Chief Magistrate Judge's determination that Defendant provided his consent to search the residence, Defendant argues that, because the Report found that law enforcement officers had already entered the home prior to Defendant giving his consent to search, the fruits of the search should be suppressed. (*Id*. at 642.) In response, the United States argues that the Chief Magistrate Judge was correct to find that the search did not commence until Defendant consented to it, and that Defendant was not coerced into consenting. (ECF No. 128 at PageID 681–83.)

5

"The Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *United States v. Thomas*, 430 F.3d 274, 276 (6th Cir. 2005). While officers may approach a suspect's home without a warrant for the purposes of a "knock and talk," they cannot enter the premises without either a warrant or consent by a party with the authority to give it. *Cummings v. City of Akron*, 481 F.3d 676, 685 (6th Cir. 2005) ("Without a warrant or consent, searches or seizures inside the home are upheld only under extraordinary circumstances, because the freedom from armed intrusions of the home outside the judicial process, without prior approval by a judge or magistrate . . . is one of our most basic civil liberties.") (Internal quotation marks omitted).

Where an individual consents to a search, no warrant is necessary, however, any kind of consent is not sufficient to waive the protection against unreasonable searches in the Fourth Amendment. While there are a number of factors used to determine whether a valid consent to search was given, see *United States v. Montgomery*, 621 F.3d 568, 572–74 (6th Cir. 2010) (discussing whether consent was given intelligently when a suspect is impaired); see also *United States v. Carr*, 187 F. App'x 602, 606–07 (6th Cir. 2006) (discussing the need for authority over the place to be searched), one factor of particular importance here is when the consent was given.

Consent must be given prior to the commencement of the search. *United States v. Chambers*, 395 F.3d 563, 569–70 (6th Cir. 2005), *abrogated on other grounds*, *Kentucky v. King*, 131 S. Ct. 1849 (2011). Where an illegal entry is made and consent is eventually given, suppression is still required "unless the taint of the initial entry has been dissipated before the consents to search were given. Dissipation of the taint resulting from an illegal entry ordinarily involves showing that there was some significant intervening time, space, or event." *United States v. Buchanan*, 904 F.2d 349, 356 (6th Cir. 1990); *see also United States v. Blackaby*, No. 17-5-

6

DLB-EBA, 2018 U.S. Dist. LEXIS 22204, *28–29 (E.D. Ky. Feb. 12, 2018) (finding a gap of several minutes between the commencement of the search and the consent as not sufficient to dissipate the taint of the illegal entry.)  While there is not a rule rendering all searches that occur prior to consent as unlawful *per se*, there must be some intervening time or event to dissipate the taint of the unlawful entry, and the consent is not valid if it is merely an acceptance of what is already occurring.

As it relates to the consent to the search and the moments leading up to it, the Report found the following:

> When Rogers returned, Investigator Jones told him the officers were responding to a tip that he was growing marijuana on the property and that he had a gun. Rogers, who had been arrested by Investigator Jones for growing marijuana in 2011, responded by saying that he was "doing the same thing as last time."[5] Rogers also told Investigator Jones where some of the marijuana plants were growing around the property. The conversation lasted less than two minutes. *When it was over, the other investigators entered the house while Investigator Jones introduced Rogers to Agent White.*[6]
> Agent White first asked Rogers if he was on probation and then told him that she wanted to read him his Miranda rights before speaking with him. She provided him with a copy of an ATF Advice of Rights and Waiver Form, which Rogers signed . . . . Shortly thereafter, Agent White asked Rogers if the officers could search the house and if he would sign a Consent to Search form. Rogers signed the Consent to Search form at 12:21 p.m.  After obtaining verbal and written consent for the search, White entered the house to participate in the search.

(ECF No. 121 at PageID 479–80) (emphasis added).  This finding suggests that investigators entered the home prior to Defendant consenting to the search because neither written nor verbal consent was given to search until after the officers entered the home.  While the Report concluded

---

5. The Court notes that Defendants' response to Investigator Jones was not determinative to the Court's conclusion that there was probable cause for law enforcement to believe Defendant resided at 2267 Curve Nankipoo Road.

6. While the Report notes that Defendant gave both verbal and written consent to Agent White, (ECF No. 121 at PageID 485), the consent would only have been valid if Defendant had given this verbal consent *prior* to the other officers entering the home.

that Defendant gave valid consent because the search had just begun and was not yet completed, (*Id*. at PageID 486 n. 10), the law requires consent to be given prior to an illegal entry, not midway, nor even shortly after it has commenced. As a result, this Court **SUSTAINS** Defendant's objection to the Report's conclusion that he gave valid consent to search the residence.

As a matter of law, the consent exception to the Fourth Amendment is not satisfied. The Report found that officers entered the home several minutes prior to Defendant signing the consent to search form that was provided by Agent White. (*Id*.) Where a search commences prior to consent, and there is no intervening time, space, or event that dissipates the taint of the illegal entry, then this ex post facto consent is not valid. *Buchanan*, 904 F.2d at 356. Therefore, Defendant did not provide valid consent to the search.

2. The probationer exception applies; therefore, no consent was needed.

Despite the fact that Defendant did not provide valid consent, no such consent was needed because the probationer exception to the Fourth Amendment is applicable. Defendant argues that, although Defendant's probation order did contain a provision informing him that his place of residence was subject to a warrantless search, because the 2267 Curve Nankipoo Road address was not Defendant's residence, the location is not covered under the probation order. (ECF No. 124 at PageID 646.) In response, the United States submits that the Chief Magistrate Judge was correct to find that a specific address need not be expressly listed on a probation order in order to be covered because officers had probable cause to believe Defendant was residing at 2267 Curve Nankipoo Road. (ECF No. 128 at PageID 680.)

Concerning the application of the probationer exception, the crux of Defendant's objection is that the 2267 Curve Nankipoo Road residence is not the one listed on Defendant's probation order. (ECF No. 124 at PageID 646–52.) "A probationer's home, like anyone else's, is protected

8

by the Fourth Amendment's requirement that searches be reasonable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Reasonableness is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118–19 (2001).

Given the rehabilitative purposes of probation, as well as the need to protect the public from those who are more likely to break the law, the standards concerning the reasonableness of a search which apply to ordinary citizens do not apply to probationers. *Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987) ("A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements."); *Knights*, 534 U.S. 112, 121 ("Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. Those interests warrant a lesser than probable-cause standard here.") Thus, an individual's expectation of privacy is altered when he takes on the status of a probationer.

Law enforcement officers may conduct a warrantless search of a probationer's residence pursuant to a probation order. *See Griffin*, 483 U.S. at 880; *Knights*, 534 U.S. at 118-19. These searches need not be supported by any level of suspicion, see *United States v. Tessier*, 814 F.3d 432 (6th Cir. 2016), because probationers have a "significantly diminished" expectation of privacy. *Knights*, 534 U.S. 120.

The residence searched without a warrant need not be the exact one listed on a probation order. *United States v. Payne*, 588 Fed. App'x 427, 434 (6th Cir. 2014); *see also United States v.*

9

*Damron*, No. 18-3129, U.S. App. LEXIS 25679 (6th Cir. Sept. 10, 2018). The Sixth Circuit has left the question open as to whether, like a probationer's primary residence, a residence not explicitly listed on a probation order can be searched absent any level of suspicion. *See Payne*, 588 F. App'x at 433 ("Because . . . probable cause existed, it is not necessary to decide whether reasonable suspicion connecting a parolee or probationer to the premises to be searched would be sufficient under the balancing called for by *Knights*."). Similar to *Payne* and *Damron*, the Court does not need to reach the question of reasonable suspicion because officers had probable cause to believe that Defendant was residing at the 2267 Curve Nankipoo residence.

Probable cause is a term that escapes a neat definition and must be determined based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 231 (1983) ("[T]he probable-cause standard is . . . a practical, nontechnical conception. In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.") (internal quotation marks and alterations omitted). "No simple formula defines probable cause. It is more than a bare suspicion (reasonable suspicion) but less than a probability." 1 John Wesley Hall Jr., Search and Seizure § 6.08 (2020). In the context at issue here, the question is as follows: did the officers have probable cause based on the totality of the circumstances to believe that Defendant lived at the 2267 Curve Nankipoo Road residence? The Report found that they did, and this Court agrees.

Given the totality of the circumstances, officers had multiple reasons to suspect that Defendant resided at 2267 Curve Nankipoo Road. Consider the events as they unfolded to the officers: First, the tip received by officers that Defendant was on probation, growing marijuana, and storing firearms at the house created the initial basis for officers' belief that Defendant was

residing there. (ECF No. 122 at PageID 541.) Second, the corroboration by Defendant's probation officer that Defendant was on probation further supported the veracity of the tip with respect to Defendant's presence there. (*Id*. at PageID 542.) Third, Investigator Jones had previously arrested Defendant for a marijuana-related offense and therefore knew Defendant to have possessed it in the past. (*Id*. at PageOD 512.) Fourth, when officers arrived at the residence, Defendant stepped out of the home, thus confirming his presence there. (*Id*. at PageID 544.) Not only was Defendant's dog with him at the residence, but there was even a kennel alongside the home for the dog. (*Id*. at 545.) The presence of the kennel is of particular significance because it further cemented law enforcement's impression that he was staying at the residence because he had an accommodation for his dog there. Lastly, when Investigator Jones informed him why officers were at the residence, he immediately admitted to growing marijuana again. He proceeded to then point out areas around the property where it was stored, thus confirming not only the veracity of the tip, but also demonstrating a familiarity with the property consistent with the sort of knowledge a resident of the home would have. (*Id*. at PageID 517.) All of this occurred prior to the beginning of the search, and every event served to support the belief that Defendant was living at this residence.

In sum, the scene the officers encountered upon pulling into the driveway of the residence was one of a man exiting his residence, putting his dog away, and then, when informed why the officers were there, voluntarily admitting to doing the "same thing as last time;" that is, growing marijuana. (*Id*.) The officer's had probable cause to believe that they were in accordance with the search provision of Defendant's probation order, and therefore, no warrant was needed to search the residence in accordance with the probationer exception to the Fourth Amendment.

11

Beyond the existing caselaw, to hold that the probationer exception does not apply in this instance would frustrate the purpose of the search condition in probation orders. Given the government's interest in promoting the rehabilitation of probationers— as well as the need to protect the public— "the standards concerning the reasonableness of a search which apply to ordinary citizens do not apply to probationers." *Griffin*, 483 U.S. at 873–74. If the Court were to permit the search condition of Defendant's probation order to be so easily evaded despite numerous indications that Defendant was using the 2267 Curve Nankipoo Road home as his residence, at least part of the time, then it would permit future probationers to get around these provisions by simply staying at a different residence every few days.

"The Fourth Amendment protects people not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). When a criminal defendant agrees to a search provision as a condition of their probation order, the defendant has in effect waived his expectation of privacy in the place where an individual's privacy is at its highest. *See Florida v. Jardines*, 569 U.S. 1, 7 (2013) ("Th[e] area around the home is intimately linked to the home, both physically and psychologically, and is where privacy expectations are most heightened.") (internal quotation marks omitted). Here, Defendant was clearly treating the 2267 Curve Nankipoo Road property as a part-time residence and officers had numerous reasons to believe this to be the case. The fact that the address listed on his probation order was not the location searched is immaterial in this instance given the fact that officers had probable cause to believe Defendant was living at the residence. Accordingly, Defendant's objection to the Report's application of the probationer exception are **OVERRULED**.

**B.    The Statements Made at the 2267 Curve Nankipoo Road Residence and the Lauderdale County Justice Center.**

Defendant's objections to the R&R's conclusions concerning the Fifth Amendment are three-fold. First, Defendant argues that he was "in custody" from the beginning of his encounter

12

with officers for purposes of *Miranda*. (ECF No. 124 at PageID 652–53.) Second, Defendant asserts that he did not waive his *Miranda* rights while at the 2267 Curve Nankipoo Road residence. (*Id*. at PageID 653–56.) Third, Defendant asserts that the statements made while at the justice center were made without being properly Mirandized. (*Id*. at 656–57.) Overall, Defendant's first objection is centered on the statements made before he waived his *Miranda* rights, and his second and third objections focus on whether he ever waived his *Miranda* rights at the 2267 Curve Nankipoo Road residence or otherwise.

1. <u>Defendant was not "in-custody" for purposes of *Miranda* in his initial encounter with law enforcement.</u>

The crux of Defendant's objections to the R&R's conclusions concerning the Fifth Amendment can ultimately be reduced to the Chief Magistrate Judge's factual findings. Defendant argues that, under his version of events, he was in custody for purposes of *Miranda* immediately upon exiting the home and interacting with officers. (ECF No. 124 at PageID 653.) Additionally, Defendant argues that under his version of events,[7] Defendant did not waive his *Miranda* rights while at the 2267 Curve Nankipoo Road residence and was not properly Mirandized at the Justice Center later that day. In sum, Defendant is arguing that the Chief Magistrate Judge should have believed his version of events and not that of Investigator Jones and Agent White.

"[T]he obligation to administer a *Miranda* warning to a suspect only arises where there has been such a restriction on a person's freedom as to render him 'in custody.'" *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495

---

7. At the evidentiary hearing, Defendant testified that as soon as he walked out of the house, officers had their guns drawn on him and his dog. (ECF No. 122 at PageID 610.) Defendant further testified that he only signed the consent to search form at the residence, and that the waiver of *Miranda* rights form must have been signed later at the Justice Center. (*Id*. at PageID 615–16.)

13

(1977)). A suspect is considered to be in custody for purposes of *Miranda* where "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Mathiason*, 429 U.S. at 495).

The Report made a finding that when Defendant came out of the residence to meet the officers, no weapons were drawn, except for a Taser which was briefly unholstered when Defendant's dog ran up to the officers. (ECF No. 121 at PageID 478.) Additionally, the Report found that, the Taser being temporarily drawn notwithstanding, the initial interaction with Investigator Jones and Defendant to be calm and peaceable. (*Id*. at PageID 493–94.) Although Defendant testified at the evidentiary hearing that officers were pointing guns at him when he exited the house, (ECF No. 122 at PageID 609–610), the Report found this testimony not to be credible.[8]

Based on the factual finding of the R&R, Defendant was not in custody during his initial encounter with law enforcement, and therefore officers were not required to inform Defendant of his *Miranda* rights. What has essentially happened here is that several police officers approached a home to inquire about alleged criminal conduct, and when they made contact with the individual suspected to be involved with said conduct, he almost immediately began confessing to engaging

---

8. Defendant also testified that this interaction with Investigator Jones was more cordial than previous meetings:
> Q. And you've had encounters with Investigator Jones before this; is that correct?
> A. I have.
> Q. And were they of similar, you know, were they cordial? Were you kind of plainspoken like you were this time?
> A. Well actually, they kicked the door in at 3 a.m. last time. Lit my chest up like a Christmas tree with lasers, so it was nothing like this time at all.

(ECF No. 121 at PageID614.)

14

in a criminal act and pointing out where it was located, and such statements cannot be suppressed just because the suspect was unusually quick in his candor about his criminal conduct.

> 2. There is no reason to disturb the Chief Magistrate Judge's factual finding that Defendant waived his *Miranda* rights.

Defendant has not presented the Court with a basis to reject the Report's factual finding that he waived his *Miranda* rights at the 2267 Curve Nankipoo Road residence. Because the Chief Magistrate Judge acted as the finder of facts in this case, his findings are entitled to deference. *United States v. Akins*, No. 08-cr-20397-JPM, 2011 U.S. Dist. LEXIS 73495, *4 (W.D. Tenn. July 6, 2011) ("The Magistrate Judge, as the fact-finder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility. The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference.") "Credibility determinations of the magistrate judge should be accepted by a district judge unless he finds a reason to question the magistrate judge's assessment." *United States v. Brown*, No. 1:07-CR-9, 2007 U.S. Dist. LEXIS 33521, at *1 (E.D. Tenn. May 7, 2007) (internal alterations omitted).

After reviewing the transcript of the evidentiary hearing, the Report, and Defendant's objections, the Court finds no reason to disturb the factual findings of the Chief Magistrate Judge. The Report found testimony of Investigator Jones and Agent White concerning the events of the day to be credible and that of Defendant to be otherwise. Accepting these officers' version of events, the Report correctly found that Defendant was not in custody at the beginning of his encounter with law enforcement at the 2267 Curve Nankipoo Road residence, that he promptly waived his *Miranda* rights while still there, and that the *Miranda* warning given at the residence was still in effect when he was interviewed by Agent White at the Justice Center. *Treesh v. Bagley*, 612 F.3d 424, 431-32 (6th Cir. 2010) ( holding that *Miranda* warnings given at the scene of an arrest were effective when a defendant was interrogated two hours later and after having been

transported between two locations because the defendant was still aware of his rights); *see also United States v. McKinney*, No. 1:17-cr-133-CLC-SKL, 2018 WL 4242410, at *6-8 (E.D. Tenn. Sept. 6, 2018) (fresh *Miranda* warnings unnecessary where defendant was read his rights when he was arrested and was interrogated by his arresting officer at the jail three hours later). Accordingly, the Fifth Amendment was not violated, and none of Defendant's statements will be suppressed. Defendant's objections to the Report with respect to the statements made at the 2267 Curve Nankipoo Road residence and at the Lauderdale County Justice Center are **OVERRULED**.

## CONCLUSION

For the reasons set forth above, the Court **ADOPTS IN PART** the Report and **OVERRULES** Defendant Rogers' objections, with the exception of Defendant's objection that he gave valid consent to search the residence. Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED**, this 4th of March, 2021.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE
